IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-418-BO

GARIBALDI LONGO, *et al.*, )
    Plaintiffs, )
)
v. ) ORDER
)
TROJAN HORSE LTD., *et al.*, )
    Defendants. )

This cause comes before the Court on plaintiffs' motion to certify class and cross-motions for summary judgment filed by plaintiffs and defendant Ascensus Trust. A hearing was held on the matter before the undersigned on September 2, 2016, at Raleigh, North Carolina. For the reasons discussed below, plaintiffs' class is certified and summary judgment is entered in favor of plaintiffs on all claims.

## BACKGROUND

Plaintiffs filed this putative class action regarding the alleged failure of defendants to make contributions to a "defined contributions plan," or 401(k) plan (the Plan), of which plaintiffs are beneficiaries. Plaintiffs, participating employees of defendants Trojan Horse and Glen Burnie Hauling, allege that since January 1, 2009, eligible participants have contributed a portion of their wages to the Plan, but that beginning in May or June 2012, defendants have failed to make deposits into the plan, notwithstanding that they have continued to deduct and withhold the regular contributions from plaintiffs' wages. Plaintiffs filed this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq*.

On September 11, 2013, plaintiffs voluntarily dismissed their claims against Ascensus Trust, Inc. and Frontier Trust Company. [DE 44]. The Court on January 15, 2014, denied a motion to dismiss filed by Trojan Horse, Ltd., Glen Burnie Hauling, Inc., and related defendants (Trojan Horse defendants). [DE 53]. Subsequent to the Court's order on dismissal, counsel for the Trojan Horse defendants was permitted to withdraw, and clerk's default under Rule 55 of the Federal Rules of Civil Procedure was entered against defendants Trojan Horse, Glen Burnie Hauling, Trojan Horse Ltd 401(k) Plan, Brian Hicks, and Sherry Korb. [DE 65]. Following a period of discovery, plaintiffs moved to join Capitol Expressways, Inc., BDH Logistics LLC, and Ascensus Trust Company as defendants; plaintiffs further stipulated to dismiss their claims against defendants Stubbs and Korb without prejudice. [DE 75 & 77]. The Court permitted joinder of Capitol Expressways, BDH, and Ascensus Trust as defendants and the filing of an amended complaint on April 2, 2015. [DE 79].

Plaintiffs' amended complaint alleges claims for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B), breach of fiduciary duties under 29 U.S.C. § 1132(a)(2), injunctive and other equitable relief under 29 U.S.C. § 1132(a)(3), and for attorneys' fees under 29 U.S.C. § 1132(g). Clerk's default has been entered against defendants Capitol Expressways and BDH. [DE 108]. By order entered November 12, 2015, the Court denied Ascensus Trust's (Ascensus) motion to dismiss. [DE 109]. Specifically, the Court held that the Trust Agreement at issue expressly provided that Ascensus would be responsible for ensuring that Plan contributions were made and that Ascensus was a fiduciary. *Id.*

The case is now before the Court on plaintiffs' motion to certify this action as a class action and on cross-motions for summary judgment filed by plaintiffs and defendant Ascensus.

2

## DISCUSSION

I.  CROSS-MOTIONS FOR SUMMARY JUDGMENT

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). When ruling on cross-motions for summary judgment,[1] a court considers each motion independently to determine whether judgment under Rule 56 may be entered. *See, e.g., Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

---

[1] The Court has considered Ascensus' argument that plaintiffs' opposition to its motion for summary judgment and cross-motion for summary judgment were untimely filed and holds that plaintiffs' filing was timely. *See* Fed. R. Civ. P. 6(d). Further, the Court will consider plaintiffs' motion for summary judgment although it was filed beyond the time provided by the scheduling order as the motion has been fully briefed, Ascensus has had an opportunity to respond, and the Court finds no prejudice which would accrue in considering plaintiffs' motion. *See, e.g., Turner v. United States*, 736 F.3d 274, 283 (4th Cir. 2013).

3

Accordingly, the Court has considered the motions filed by plaintiffs and Ascensus and the exhibits thereto,[2] as well as the statements of undisputed material facts filed pursuant to Local Civil Rule 56.1. There is no dispute in this matter that contributions were not deposited with the Plan as required. Rather, Ascensus argues that as a matter of law it should not be liable for the fact that contributions were not collected or deposited according to the terms of the Plan.

A.  *Fiduciary status*

As the Court has previously held, Ascensus is a fiduciary in regard to the making of employee contributions to the Plan. [DE 109]. In considering Ascensus' motion to dismiss based on its non-fiduciary status, the Court considered the Plan documents and held that whether Ascensus had discretion to interpret or construe the terms of the Plan had no bearing on what the Court found to be its fiduciary obligation to ensure that the Plan receives the funds to which it is entitled or to enforce the Plan Administrator's obligation to deposit contributions to the Plan. *Id.* at 7. Ascensus has not submitted any evidence or argument which persuades the Court that's its prior ruling on Ascensus' fiduciary status with respect to Plan contributions was in error.

ERISA demands that a fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Ascensus relies on the limiting language in the plan which would, it contends, cabin any fiduciary duty it may have had to the proper handling of funds once deposited and transferred to it. Indeed, the Plan expressly states that Ascensus shall have no duty or responsibility for determination of the accuracy or

---

[2] Because the Court does not have before it the reports of plaintiffs' experts Hamad and Wheaton to consider when deciding the pending motions, it DENIES Ascensus' motion to strike as premature. [DE 146].

4

sufficiency of any contributions to the plan or for the collection of contributions. [DE 147-14 at 6]. However, "[t]here is more to plan (or trust) administration than simply complying with the specific duties imposed by the plan documents or statutory regime; it also includes the activities that are ordinary and natural means of achieving the objective of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 504 (1996) (internal quotation and citation omitted).

In the context of ERISA, "trust documents cannot excuse trustees from their duties under" the statute. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568 (1985). The Supreme Court has recognized that a central purpose of ERISA is to ensure that "if a worker has been promised a defined pension benefit upon retirement-and if he has fulfilled whatever conditions are required to obtain a vested benefit-he actually will receive it." *Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 375 (1980). It is thus through this lens that the Court must determine whether the Plan's express language is sufficient to absolve Ascensus of any duty as a fiduciary concerning whether contributions were properly made to the plan.

In so doing the Court is instructed by the Sixth Circuit's opinion in *Best v. Cyrus*, 310 F.3d 932 (6th Cir. 2002). There, the court of appeals, relying on the precedent discussed above, held that the fiduciary duties of a trustee, whose express duties were limited by the defined contribution plan to administration of investments, were in fact not limited to those described in the plan document and that ERISA imposed a specific duty on that trustee to secure contributions and repayments which it would under the plan documents be responsible for administrating. *Id.* at 935-936. The Court finds the circuit court's reasoning persuasive, and holds that it similarly applies in this instance where Ascensus was under an express duty to administer funds once

5

received and thus under the principles of ERISA had a further duty to ensure that those contributions were being made. *See also Solis v. Plan Ben. Servs., Inc.*, 620 F. Supp. 2d 131, 141 (D. Mass. 2009) (joining "courts which have found that Section 403 imposes not only a right, but also a duty, on trustees to monitor and collect employer contributions to ERISA funds.").

B.   *Breach of fiduciary duty*

As the Court has determined that Ascensus has as a matter of law a fiduciary duty in regard to the Plan contributions, it next determines whether summary judgment is appropriate on the issue of breach.

(i) Plan assets

The Court first determines that, contrary to Ascensus' arguments, the unpaid Plan contributions are plan assets and fall within the scope of Ascensus' duties as trustee. Plan assets include those "amounts a participant has withheld from his wages by an employer . . . as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets." 29 C.F.R. § 2510.3-102(a)(1). The Plan at issue here expressly provides that compensation to employees will include fringe benefits and that elective deferrals include any employer contributions made as a deferral at the election of an employee in lieu of cash compensation. [DE 142-2 at 12]. This is confirmed by Trojan Horse's payroll practices. *See, e.g.,* [DE 140-1].

Recognizing a perceived "unfairness in imposing strict fiduciary responsibilities—and personal liability—upon corporate officers who are not clearly aware of their status as fiduciaries," the Eleventh Circuit has held "that unpaid employer contributions are not 'plan

6

assets' unless specific and clear language in the plan documents or other evidence so indicates." *Pantoja v. Edward Zengel & Son Exp., Inc.*, 500 F. App'x 892, 895 (11th Cir. 2012). This action is distinguishable from *Pantoja* for two reasons. First, the Trojan Horse 401(k) Plan documents clearly indicate that employer contributions are in fact fringe benefits and thus Plan assets. Second, *Pantoja* and the cases it relies on concern the imposition of liability on the employer itself and its corporate assets for failing to make plan contributions. A distinction arises because "[a] corporate officer facing limited cashflow who chooses to pay corporate obligations in lieu of employer contributions to an ERISA plan does not breach a fiduciary duty when he makes those decisions wearing his corporate officer hat rather than his fiduciary duty hat." *Trustees of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008). This conflict is not present where, as here, the fiduciary is a trustee and third-party. For these reasons, the Court holds that the unpaid Plan contributions are Plan assets.

(ii) Breach of fiduciary duty resulting in loss

Under ERISA, "[t]he fiduciary obligations of the trustees to the participants and beneficiaries of the plan are those of trustees of an express trust-the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982); *see also Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 355 (4th Cir. 2014) ("ERISA imposes high standards of fiduciary duty on those responsible for the administration of employee benefit plans and the investment and disposal of plan assets."). Section 1104(a)(1) requires a fiduciary to act with the skill, care, and diligence that a prudent man in like circumstances would employ. 28 U.S.C. § 1104(a)(1)(B). "The trustee is thus expected to use reasonable diligence to discover the location of the trust

7

property and to take control of it without unnecessary delay." *Cent. States*, 472 U.S. at 572 (internal quotation and citation omitted).

Ascensus has proffered evidence that it had no knowledge of any of the actions taken or not taken by the Trojan Horse defendants regarding Plan contributions. Indeed, nothing in the record reflects that Ascensus took any affirmative steps to investigate or analyze the contributions it received, and herein lies the crux of Ascensus' breach. *See Tatum*, 761 F.3d at 360 (inaction may properly be considered to be breach of fiduciary duty). Carefully crafted plan documents aimed at insulating a trustee and an ostrich-like approach to the actions of plan administrators and other plan fiduciaries should not overshadow the fact that "ERISA is [] to be construed liberally to safeguard the interests of fund participants and beneficiaries, and to preserve the integrity of fund assets." *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 417 (5th Cir. 1990); *see also Keach v. U.S. Trust Co.*, 240 F. Supp. 2d 840, 845 (C.D. Ill. 2002) (fiduciaries should not "bur[y] their heads in the sand and fail[] to take appropriate action").

C.   *Damages resulting from the breach*

An ERISA fiduciary who breaches his duties shall be personally liable for any losses resulting from the breach. 29 U.S.C. § 1109(a). A finding that a party breached its fiduciary duty does not however require a finding that such breach caused losses and that liability should therefore be imposed. *Plasterers' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 217 (4th Cir. 2011). Instead, once the plaintiff has satisfied his burden to show that the fiduciary breached his duty, the fiduciary must then carry his burden to demonstrate that the breach did not cause the loss. *Tatum*, 761 F.3d at 363.

8

Here, the Court is not faced with determining whether sufficient evidence has been proffered to demonstrate whether a particular decision regarding management of Plan assets was prudent or whether a particular investment or divestment was imprudent. *See, e.g., Plasterers'*, 663 F.3d at 218 (failure to investigate alternative investments does not necessarily mean actual investments were imprudent). Rather, Ascensus' position on causation is that plaintiffs cannot show that Ascensus would have been successful if it had brought suit against the Trojan Horse defendants for unpaid contributions, or notified the Department of Labor, or taken other similar action, and thus they cannot prevail on the issue of causation. As discussed above, however, the burden on causation is with the fiduciary, not the plan participants. Moreover, unlike the fiduciaries in the cases cited by Ascensus, Ascensus has proffered no evidence that it weighed the risks and benefits of bringing suit or of taking any action in regard to the unpaid contributions. *See, e.g., Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 917 (2d Cir. 1989) (fiduciary acted prudently in declining to initiate suit when fiduciary had *determined* that defendant was insolvent).

A "plan fiduciary carries its burden [on causation] by demonstrating that it would have reached the same decision had it undertaken a proper investigation." *Tatum*, 761 F.3d at 364. This standard is more exacting than one which would allow a fiduciary to meet its burden by showing that a prudent fiduciary "could have" reached the same decision. *Id.* at 365. Ascensus has proffered an expert who has opined that because the Trojan Horse defendants were approaching insolvency and the Department of Labor was already on the case, "a professional and prudent fiduciary in the 401(k) industry would not have commenced suit under the circumstances here." [DE 147-4 ¶ 17]. Ascensus' expert's opinion does not discuss whether any

9

other actions could have been taken by Ascensus, including conducting an audit of Trojan Horse's records or threatening work stoppages. *Diduck*, 874 F.2d at 917. Further, Ascensus' expert opinion that a prudent fiduciary would have properly decided not to commence suit does not address the circumstance present here – the question is not whether Ascensus made a prudent choice as between actions, but whether a prudent fiduciary would have chosen, as Ascensus did, to bury its head in the sand and conduct no investigation and therefore take no action. Because a trustee breaches its fiduciary duty "by failing even to investigate a possible lawsuit . . . to recover the delinquent contributions . . ..". *Diduck*, 874 F.2d at 917, and further "breaches his duty when he fails to consider his obligations to collect delinquent contributions," *Holdeman v. Devine*, 572 F.3d 1190, 1193 (10th Cir. 2009), the Court holds that Ascensus has not carried its burden on causation here.

D.  *Co-fiduciary liability*

That ERISA will not tolerate willful ignorance is further illustrated by its express provision for co-fiduciary liability. 29 U.S.C. § 1105(a) provides that "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan" if the fiduciary's failure to comply with § 1104(a)(1) enabled another fiduciary to commit a breach. 29 U.S.C. § 1105(a)(2). Section 1105(a)(2) does not require any knowledge of what the co-fiduciary is doing in order to impose liability. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 581 (S.D. Tex. 2003).

As discussed above, Ascensus' inaction in this instance is sufficient to demonstrate that it breached the prudent man standard in acting as a fiduciary for the Plan and its participants. *See Tatum* 761 F.3d at 360 ("By conducting no investigation, analysis, or review of the

10

circumstances . . . , [the fiduciary] acted with procedural imprudence no matter what level of scrutiny is applied to its actions."). Particularly instructive to the Court on this issue is the Seventh Circuit's holding in *Free v. Briody*, 732 F.2d 1331 (7th Cir. 1984). In that case, Briody argued, like Ascensus, that he could not have failed to discharge any duty in compliance with the prudent-man standard because he was not a trustee or was not aware of his trustee status. *Id.* at 1335. Noting that the court had already rejected Briody's argument that he was not a trustee, it held that "[b]y failing to take any action with respect to the Plan, Briody enabled Hodgman to breach his fiduciary duties." *Id.* The court went on to state that Briody "could not avoid liability for Hodgman's mismanagement of the Plan by simply doing nothing." *Id.* at 1336.

A similar circumstance is present here. Although Ascensus attempted to limit its fiduciary status through the terms of the Plan documents, it cannot not avoid its high fiduciary duty to the Plan participants. Nonfeasance is plainly a breach of fiduciary duty under § 1104(a)(1), *see id.* (citing H.R.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 5038, 5080), and liability is proper as against Ascensus for the loss incurred here.

E.  *Remaining claims and arguments*

Plaintiffs' claims are not barred by the Service Contract Act, 41 U.S.C. §§ 6701 *et seq.*, as the Court has determined that the contributions at issue are appropriately considered Plan assets and are governed by ERISA. *See also Longo v. Trojan Horse Ltd.*, 992 F. Supp. 2d 612, 616 (E.D.N.C. 2014) ("ERISA and the SCA can each be given effect and plaintiffs are not limited to a remedy under the SCA for claims of unpaid benefits or breach of fiduciary duty under ERISA."). Plaintiffs' claims are further not barred by the default judgment obtained by

11

the Department of Labor against the Trojan Horse defendants. Ascensus Trust was not a defendant in that action and its status as a fiduciary was not decided, thus the judgment in that action does not have any preclusive effect on whether Ascensus committed any breach or should be held responsible for the loss. *See Montana v. United States*, 440 U.S. 147, 153 (1979).

Because the Court has found that liability for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) is proper, plaintiffs' claims for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) and for injunctive and other equitable relief under 29 U.S.C. § 1132(a)(3), are redundant and may be dismissed. *See, e.g., Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015) (only where claims are based in distinct injuries can ERISA plaintiff recover for breach of fiduciary duty and for recovery of benefits).

Finally, Ascensus has asserted cross-claims for contractual and common law indemnification against defendants Trojan Horse Ltd., Glen Burnie Hauling, Capitol Expressways, BDH Logistics, and Brian Hicks. No cross-defendant has answered Ascensus' claim and each cross-defendant has already been found by the Clerk of Court to be in default as to plaintiffs' claims. [DE 65; 108]; *see also Hartford Fire Ins. Co. v. Sunteck Transp. Grp., Inc.*, No. 2:10CV191, 2011 WL 2938466, at *2 (E.D. Va. June 29, 2011) ("The general effect of the entry of default under Rule 55(a) is that the defaulting party loses his standing in court, his right to receive notice of the proceedings, and his right to present evidence at the final hearing."). There is no requirement that service under Rule 4 be perfected in order to properly assert a cross-claim, *Am. Gen. v. Equitable Gen.*, 87 F.R.D. 736, 738 (E.D. Va. 1980), and a cross-claim for contribution or indemnity has been held not to be a substantive claim. *See, e.g. Rainbow Mgmt. Grp., Ltd. v. Atlantis Submarines Hawaii, L.P.*, 158 F.R.D. 656, 660 (D. Haw. 1994).

12

Accordingly, because the cross-defendants have failed to answer the cross-claim, and there is no suggestion that plaintiffs' service of process of the amended complaint was insufficient, *In re Smith*, No. 05-81334C-7D, 2011 WL 4002251, at *2 (Bankr. M.D.N.C. Feb. 7, 2011), the Court finds that entry of default on the cross-claims is appropriate. *See, generally, Rodriguez v. Irwin*, No. 7:10-CV-102-FL, 2011 WL 737316, at *5 (E.D.N.C. Feb. 23, 2011) ("Although Rule 55(a) authorizes the clerk to enter a default, the court is empowered under the rule to direct entry of default.").

II. CLASS CERTIFICATION

Rule 23 of the Federal Rules of Civil Procedure provides that certification of a class is appropriate if the following prerequisites are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed R. Civ. P. 23(a).[3] If the prerequisites have been satisfied, the parties seeking class certification must also demonstrate that the action falls within a category of Rule 23(b). *See Haywood v. Barnes*, 109 F.R.D. 568, 575 (E.D.N.C. 1986).

A. *Rule 23(a)*

Plaintiffs have satisfied the prerequisites for class certification under Rule 23(a). Numerosity has been demonstrated as plaintiffs reasonably estimate based on payroll records that

---

[3] These requirements are generally referred to and will be referred to herein as the numerosity, commonality, typicality, and adequacy-of-representation requirements.

13

the class is comprised of approximately 485 employees with relevant deductions in 2011, 583 employees in 2012, and 433 employees in 2013. The size of the putative class clearly makes joinder impracticable. *See, e.g., Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) ("No specified number is needed to maintain a class action" and eighteen people sufficient to comprise a class).

The commonality requirement demands that there be questions of law or fact common to the class. All factual or legal questions raised in the litigation need not be common, so long as at least one issue is common to all members. *See Hosley v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984). In the instant case, the existence of common questions of law *and* fact is clear. Each named plaintiff and putative class member is a current or former employee of defendants Trojan Horse Ltd. or Glen Burnie Hauling and was a participant in the Plan. There is one Plan in which all plaintiffs participated which is governed by the same documents. The allegations against defendant Ascensus are that it breached its fiduciary duty by failing to ensure that Plan contributions were properly accounted for, made, and collected, and that Ascensus' breach gives rise to personal liability and the right of the Plan to recover any losses incurred as a result of the breach. Although there would need to be a determination of damages as to each individual class member, Rule 23 "contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification. In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 427–28 (4th Cir. 2003).

The commonality requirement has therefore been satisfied, and the same bases further support satisfaction of the typicality requirement. *See Gen. Tel. Co. of Southwest v. Falcon*, 457

14

U.S. 147, 158 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."). "The claim of a party is typical if it arises from the same event or course of conduct which gives rise to the claims of other class members and is based on the same legal theory." *Haywood*, 109 F.R.D. at 578. As with the commonality requirement, typicality does not require that the claims of the named plaintiffs be identical to those of the class, rather that there be "substantial similarity of legal theory" which both the named plaintiffs and the class advance. *Id.* As discussed above, the named plaintiffs and class members were Plan participants who made contributions to the Plan, and any breach of fiduciary duty by Ascensus would apply equally to all plaintiffs, irrespective of the measure of individualized harm.

Finally, the Court finds that the named plaintiffs will serve as adequate representatives and will fairly and adequately protect the interests of the class. The inquiry as to this final prerequisite entails whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). The Court has been presented with no persuasive argument that these plaintiffs have any interests antagonistic to those of the class, or that plaintiffs' attorneys are not sufficiently qualified and experienced. The Court finds the adequacy-of-representation requirement to have been satisfied.

B. *Rule 23(b)*

The Court must next determine whether plaintiffs have satisfied one of the conditions provided by Rule 23(b). Certification of a class under Rule 23(b)(1) is appropriate where separate actions by class members "would create a risk of inconsistent or varying adjudications .

15

. . that would establish incompatible standards of conduct for [the defendant]" or where adjudications as to individual class members would, "as a practical matter, [] be dispositive of the interests of the other members not parties . . . or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(A)-(B). Thus "23(b)(1)(A) considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re Ikon Office Sols., Inc.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000).

The Advisory Committee Notes to Rule 23(b)(1)(B) state that "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust" is an appropriate action for certification under Rule 23(b)(1)(B). Indeed, "[i]n light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009); *see also Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 67 (M.D.N.C. 2008) (listing cases). The Court finds that this case provides a similar circumstance to those which have held that class certification is appropriate under Rule 23(b)(1)(B), and that the adjudication of the claims with respect to the named plaintiffs would, as a practical matter, be dispositive of the interests of other class members or would substantial impair their ability to protect their interests.

Ascensus' reliance on *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 621 (6th Cir. 2011), to argue that certification under 23(b)(1) is inappropriate is misplaced. In *Pipefitters*, the Sixth Circuit addressed a multi-group class of self-

16

insured employee health and welfare plan groups, each of which contracted with Blue Cross Blue Shield of Michigan pursuant to different administrative service contracts. *Id.* at 622-624. Here, there is but one set of Plan documents which apply, and Ascensus' status as a fiduciary as to each member of the class will not require an individualized inquiry into separate plans or contracts. Further, the Court would note that much of Ascensus' opposition to the instant motion concerned arguments which, at bottom, address the merits of plaintiffs' claims, which the Court cannot consider when deciding a Rule 23 motion. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).

Accordingly, plaintiffs having satisfied the Rule 23 requirements, their motion to certify class is GRANTED.

C.  *Rule 23(c) & (g)*

The class certified herein is defined as:

All Trojan Horse Ltd 401(k) Plan (Plan) participants who contributed to the Plan through payroll deduction from January 1, 2011, through the date of entry of this order.

Plaintiffs Allen Hester, Carl Swanson, and Steven White are appointed as class representatives, and counsel for plaintiffs are appointed as class counsel.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to certify class [DE 136] is GRANTED. Plaintiffs' motion for summary judgment [DE 150] is GRANTED IN PART and DENIED IN PART and defendant Ascensus Trust's motion for summary judgment [DE 147] is DENIED. Plaintiffs are entitled to entry of judgment in their favor on their claim against defendant

17

Ascensus Trust for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(2). Ascensus' motion to strike [DE 146] is DENIED.

As default has been entered against the remaining defendants, the Court finds that entry of judgment against Ascensus Trust the non-appearing defendants and cross-defendants in the amount representing the unpaid contributions to the Plan, $2,985,914.27, is appropriate. Defendants shall be jointly and severally liable for the unpaid contributions pursuant to 28 U.S.C. § 1109(a). Post-judgment interest is awarded at the legal rate. As the Court finds no just reason for delay, clerk is DIRECTED to enter judgment against Ascensus Trust, BDH Logistics, and Capitol Expressways pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

The Court further finds that an award of attorneys' fees and costs to class counsel is appropriate pursuant to 29 U.S.C. § 1132(g). Class counsel shall file its affidavit in support of fees and costs not later than October 15, 2016. Any response thereto shall be filed not later than November 4, 2016.

Because defendants Trojan Horse, Ltd., Glen Burnie Hauling, Trojan Horse LTD 401(k) Plan, and Brian Hicks have appeared in this action prior to entry of default against them, notice is hereby provided in accordance with Rule 55(b)(2) that judgment by default in the amount of $2,985,914.27 shall be entered against them. Failure to oppose entry of default judgment prior to 2:00 pm (EST) on Friday, September 30, 2016, shall result in entry of default judgment.

SO ORDERED, this 20 day of September, 2016.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

18