IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GARIBALDI E. LONGO, ALLEN F. HESTER, CARL W. SWANSON, and STEVEN L. WHITE, individually and on behalf all others similarly situated,<br><br>                    Plaintiffs,<br>v.<br><br>TROJAN HORSE LTD.; GLEN BURNIE HAULING INC.; CAPITOL EXPRESSWAYS, INC.; BDH LOGISTICS LLC; BRIAN HICKS; TROJAN HORSE LTD. 401(K) PLAN; and ASCENSUS TRUST COMPANY,<br><br>                    Defendants. | Civil Action No. 5:13-cv-418-BO |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Garibaldi E. Longo, Allen F. Hester, Carl W. Swanson, and Steven L. White ("Plaintiffs") file this memorandum in support of their Motion for Final Approval of Class Action Settlement and state as follows:

**I. PRELIMINARY STATEMENT**

Plaintiffs filed this action nearly five (5) years ago. The case proceeded through highly contentious litigation, extensive fact discovery, contested class certification, dueling motions for summary judgment, and appeal to the Fourth Circuit. Defendant disputes the allegations and has continued to deny liability for alleged breaches and ERISA violations. Despite this controversy, after adversarial negotiations and good-faith bargaining at arm's length, the Parties were able to settle the case.

The court preliminarily approved the settlement by Order dated February 20, 2018. As the Court directed in its order, notice was provided to Class Members on March 22, 2018, and counsel for the Class supplemented their application for attorney's fees and costs. To date, no objections have been filed to any aspect of the settlement. "Federal courts have long recognized a strong policy and presumption in favor of class action settlements." *In re Checking Account Overdraft Litigation*, 2011 WL 5873389, 6 (S.D. Fla. 2011). As detailed below, the settlement is fair, reasonable and adequate, and the Court should give it final approval.

II.     **HISTORY OF THE CASE**

This case has been hard fought and extensively litigated. Plaintiffs commenced this action June 10, 2013, by filing a Class Action Complaint, for themselves and other employees of Trojan Horse, Ltd., Glen Burnie Hauling, Inc., BDH Logistics, LLC, or Capitol Expressways, Inc., identified in Payroll Records as having contributions to the Trojan Horse Ltd 401(k) Plan (Plan) deducted from his or her wages, alleging violations of ERISA and seeking to recover payments to the Plan that were deducted from Plaintiffs' and Class Members' wages but not deposited in the Plan.

On August 8, 2013, Defendants Trojan Horse LTD, Glen Burnie Hauling Inc., Trojan Horse LTD 401(k) Plan, Brian Hicks, Susan Stubbs and Sherry Jones (identified in the complaint under her former married name, Sherry Korb) filed motion to dismiss or alternatively to stay or transfer this Action. [DE 37]. On August 11, 2013, after discussion with defense counsel, Plaintiffs voluntarily dismissed original named Defendants Ascensus, Inc., and Frontier Trust Company, without prejudice. [DE 44]. On December 11, 2013, the Court held a hearing [DE 51] on the motion to dismiss [DE 37], and on January 15, 2014, the Court issued an order denying the motion. [DE 53].

Defendant Stubbs then answered the complaint on March 28, 2014. [DE 59]. Defendants Trojan Horse LTD, Glen Burnie Hauling Inc., Trojan Horse LTD 401(k) Plan, Brian Hicks, and Sherry Korb (a/k/a Sherry Jones) failed to respond to the complaint and as directed by the Clerk of Court [DE 61] a default was entered against those Defendants on June 4, 2014. [DE 65]. On August 29, 2014, Plaintiffs moved for additional time join additional parties and amend the Court's schedule for the case [DE 70].

Based on information obtained in discovery and made available to Plaintiffs' counsel by FOIA request to the U.S. Department of Labor, Plaintiffs amended their Class Action Complaint April 4, 2015 [DE 81] to add as a named defendant Ascensus Trust Company (Ascensus), the Directed Trustee for the Plan and asserted claims under 29 U.S.C. § 1132(a)(1)(B) (recovery of benefits), 29 U.S.C. § 1132(a)(2) (breach of fiduciary duty), 29 U.S.C. § 1132(a)(3) (injunctive and other equitable relief), and 29 U.S.C. § 1132(g) (attorney's fees and costs). Ascensus moved [DE 86] to dismiss the amended complaint on May 15, 2015, and on November 11, 2015, the Court issued an order [DE 109] denying the motion, [DE 109 at 7].

After the Court's November 11, 2015 order, the Parties engaged in extensive discovery, generating motions to compel from both sides and a motion to strike [DE 122, 125, 129, & 134]. Armed with that discovery, Plaintiffs moved for class certification on June 30, 2016 [DE 136], Ascensus moved for summary judgment on July 1, 2016 [DE 147], and Plaintiffs moved for summary judgment on July 16, 2016. [DE 150]. Each Party supported these motions with substantial evidence, legal analysis, and statements of facts. After a motion to strike expert reports [DE 146], submission of trial witness and exhibit lists [DE 154 & 161], and the Parties filed their respective responses [DE 148, 149, 150-1, 162, & 167] and replies [DE 157, 160, & 168] to the

foregoing, the Court heard oral argument on these requests for class certification and summary judgment on September 2, 2016.

By order entered September 20, 2016 [DE 170], the Court granted Plaintiffs' motion for class certification, certifying Plaintiffs' claims for class treatment under Federal Rule of Civil Procedure 23(b)(1)(B), defining the Class as "All Trojan Horse Ltd 401(k) Plan (Plan) Participants who contributed to the Plan through payroll deduction from January 1, 2011, through the date of entry of this order," appointing as Plaintiffs Allen F. Hester, Carl W. Swanson, and Steven L. White, as class representatives and appointing Plaintiffs' counsel as Class Counsel.

In the same order [DE 170], the Court adjudicated the merits in favor of Plaintiffs and the Class against all defendants, including Ascensus, declaring them jointly and severally liable to the Plaintiffs and Class Members for their unpaid contributions to the Plan, awarding the sum of $2,985,914.27 to Plaintiffs and Class Members representing the amount of unpaid contributions, plus interest, and awarding Class Counsel attorneys' fees and costs. *Id.* Thereafter, Plaintiffs submitted affidavits specifying hours expended and rates and comparing those to a percentage-of-the recovery calculation. [DE 177 to 177-9, calculations and explanations appearing in DE 177 at ¶¶ 6-8].

On October 11, 2016, Ascensus appealed the September 20, 2016 Order and corresponding judgment [DE 171] to the United States Court of Appeals for the Fourth Circuit. [DE 174]. The Parties fully briefed and debated their respective positions and during pendency of the appeal, on September 12, 2017, the Parties reached an agreement in principle to resolve all claims without the necessity, expense, and risks of further rulings and appeals. *See* Declaration of Stephen A. Dunn (Dunn Decl.) [DE 203-5 at ¶¶ 18-19, 22]. After agreement in principle, the Parties jointly

4

moved to abate appellate proceedings and remand the case, to work out details of the settlement and present it for approval to this Court.[1]

After execution of a Settlement Agreement, on February 7, 2018, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Settlement and Approval of Form and Manner of Notice. [DE 202-203], granted by Order dated February 20, 2018. [DE 205]. In accordance with the Order, on March 5, 2018, Plaintiffs filed Motion for Approval of Attorney's Fees, Costs and Service Awards [DE 206-207], supplementing prior affidavits and billing statements ([DE 177-179]). Notice was disseminated to Class Members on March 22, 2018. *See* Declaration of Steve Giannotti ¶7 (Giannotti Decl.), attached hereto as Exhibit 1.

## II. THE SETTLEMENT

### A. Settlement Fund and Independent Fiduciary

As previously discussed [DE 203], the heart of the settlement is a Settlement Fund of $2,702,233.37, which is roughly 90% of the amount the Court awarded Plaintiffs and the Class in the order granting class certification and summary judgment for Plaintiffs and the Class. [DE 170 at 18]; Agreement § 2.1 [DE 203-1]. Once the settlement is final, Ascensus must pay this amount into an account to be used solely to pay Class Members under the settlement. *Id*. at §§ 2.1. 2.3. From the Settlement Fund, individual payments called "Allocated Shares" will be mailed to each Class Member. *Id*. at §§ 2.2, 2.6. Each Class Member's Allocated Share will be not less than 85% of the monies award by the Court to that Class Member, $2,985,914.27 in the aggregate, which represented monies deducted as Plan contributions from each Class Member's pay, but not deposited in the Plan on his/her behalf. *Id*. at § 2.2; Dunn Decl. [DE 203-5 at ¶ 24].

---

[1] [DE 190]; Dunn Decl. [DE 203-5 at ¶22].

5

The Settlement Fund will be held in a separate, interest-bearing account unconnected from any account owned or possessed by Ascensus. *Id*. at §§ 2.1-2.3. Metro Benefits Incorporated ("Metro Benefits"),[2] 8150 Perry Highway, Suite 311, Pittsburgh, PA 15237, has been appointed the Independent Fiduciary to manage the Settlement Fund and distribute the Allocated Shares to Class Members from this account. *Order* [DE 205 ¶7]; Agr. [DE 203-1 at § 2.3-2.4]. Ascensus will pay up to $40,000.00 of the $80,000.00 estimated costs and expenses of Metro Benefits relating to its duties under the Agreement. *Id*. at ¶10. Any costs or expenses exceeding $40,000.00 will be taken from the Settlement Fund. *Id*.

Metro Benefits ensures the Plan is managed separately and Settlement Fund distributed in the best interests of the Class. *See* Dunn Decl. [DE 203-5 at ¶26]. Under the Agreement, the roles and duties of Metro Benefits include establishing and controlling the account holding the Settlement Fund, gathering records on Plan contributions, calculating each Allocated Share, advising Class Members about their options and tax consequences of receiving an Allocated Share, mailing checks to Class Members, maintaining and advising Class Members about the tax implications of their Allocated Shares, and winding up the Plan in accordance with federal law, the Plan documents, and this Court's orders. [DE 203-1 at §§ 2.4, 2.8]. In anticipation of final approval and fulfillment of the Parties' responsibilities to the Independent Fiduciary, Plaintiffs uploaded all payroll records from 2011-2013 for Class Members to Metro Benefits' secure client portal. Following upload, Plaintiffs organized a teleconference with the Notice Administrator, Angeion, and Metro Benefits. This virtual meeting was a joint cooperative to facilitate communication on Class Notice, the class list and current address information, as well as, long term, to assist in the Settlement Fund's distribution to the Class. In the process, Metro Benefits

---

[2] More information on Metro Benefits can be found on its website at http://metrobenefits.com/.

supplied critical timing information on reconciliation and individual allocation of shares for inclusion in the Class Notice.

## B. Class Notice

Angeion Group,[3] 1801 Market Street, Suite 660, Philadelphia, PA 19103, was appointed the Notice Administrator. *Order* [DE 205 ¶6]. After the Parties provided Angeion with the payroll records and the Plan Participant Census, Angeion scrubbed the information for incomplete or missing information searching and updating all listings through USPS change of address database. *See* Giannotti Decl ¶¶4-11. Angeion revised the Class Notice to include a toll-free number and dedicated website and circulated to Counsel for approval. *Id.* at ¶¶12-14, Ex. B. Angeion disseminated Class Notice to 989 unique Class members on March 22, 2018 through U.S. First Class Mail. *Id.* at ¶¶5,7. Four (4) Class notices were returned with forwarding addresses and re-mailed. *Id.* at ¶9. Of the 219 notices returned as undeliverable, 165 were re-mailed where a new address was found through verification searches ("skip traces"). *Id.* at ¶10. Angeion established a Settlement Website www.trojanhorsesettlement.com, presently containing the Class Notice, Order Preliminarily Approving Class Settlement and Approving Form and Manner of Notice, and the Settlement Agreement. *Id.* at ¶12. Angeion maintains a toll-free number and VRU telephone system containing recorded answers to frequently asked questions, along with an option permitting callers to speak to live operators during normal business hours for the mainland US states or leave messages in a voicemail box. *Id.* at ¶13. Angeion is able to receive and respond to Class Member inquiries via telephone and US Mail. Angeion has performed and will continue to perform the notice-related services described in the Settlement Agreement. *See* [DE 203-1 at § 3.1]. Critically,

---

[3] More information on Angeion Group can be found on its website at http://www.angeiongroup.com/.

Ascensus will pay all the costs and expenses of Angeion and none will be taken from the Settlement Fund or in any way reduce any Allocated Share. *Id*.

### C. Objections, Appearances, and Fairness Hearing

A Fairness Hearing is scheduled for June 5, 2018. *Order* [DE 205 p.7]. The Court's Preliminary Approval Order provided a deadline of May 7, 2018 for objectors, and procedures for objectors and/or interveners to ensure that that all interested persons were afforded a reasonable opportunity to object and be heard. *Id*. at ¶¶13-15. The procedure required filing with the Court a written objection statement, containing all information stated as required in the Class Notice, and serve on Class Counsel and Defense Counsel a notice of appearance no later than May 7, 2018. *Id*. Class Notice was mailed to 989 drivers and as of today's deadline, no objections or appearances have been filed.

### D. Other Settlement Provisions

In exchange for dismissal with prejudice of all claims of Plaintiffs and the Class against Ascensus, as with most settlements, the Agreement contained a release for which the Settlement Fund and other promises provide consideration. [DE 203-1 at §§ 1.21-1.23, 8.1]. The parties consented to continuing jurisdiction for enforcement of the Agreement in this Court. *Id*. at § 6.2. The Agreement provided that Ascensus will pay Class Counsels' attorney's fees and costs and for a means to request Service Awards for each named Plaintiff. *Id*. at §§ 9.1-9.2. The settlement acknowledged negotiation of these payments were separate from and after the Parties reached agreement on relief to the Class. *Id*. at § 9.1. Further, any attorney's fees and costs approved by the Court will not be paid from or in any way reduce the Settlement Fund. Ascensus will pay them to Class Counsel separately. *Id*. at § 9.2. Service awards, if approved by the Court, shall be paid out of the Settlement Fund. *Id*. at § 9.2.

**III. ARGUMENT**

"The voluntary resolution of litigation through settlement is strongly favored by the courts." *S.C. Nat. Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990). In a class action brought under Rule 23, Court approval is required for settlement of the claims of a certified class. Fed R. Civ. P. 23(e). The primary concern being "protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). The Court may "limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). If the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement. *In re Red Hat, Inc. Sec. Litig.*, 5:04-CV-473-BR(3), 2010 WL 2710517, at *1 (E.D.N.C. June 11, 2010) (citations omitted).[4] The court begins with a "strong initial presumption that the compromise is fair and reasonable." *S.C. Nat. Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991). For the following reasons, the Agreement is fair, reasonable, and adequate.

**IV. FINAL APPROVAL IS WARRANTED.**

To determine final approval of a class settlement, the court employs a "bifurcated analysis, separating factors relating to the "fairness" of the settlement from those relating to its "adequacy." *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 828 (E.D.N.C. 1994). Fairness focuses on whether the proposed settlement was negotiated at arm's length and adequacy focuses on whether the consideration provided to the class members is sufficient. *In re Red Hat, Inc. Sec. Litig.*, 2010 WL 2710517 at *1 (citing *Jiffy Lube*, 927 F.2d at 158–59; *Beaulieu v. EQ Indus. Servs., Inc.*, 5:06-CV-00400BR, 2009 WL 2208131, at *1 (E.D.N.C. July 22, 2009)

**A. The Settlement is Fair.**

---

[4] Report and recommendation adopted, 5:04-CV-473-BR, 2010 WL 2710446 (E.D.N.C. July 8, 2010).

Factors relating to the fairness of a proposed settlement are: (1) the posture of the case at the time the proposed settlement was reached, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the settlement negotiations, and (4) counsel's experience in the type of case at issue. *Jiffy Lube*, 927 F.2d at 158–59; *Horton,* 855 F. Supp. at 828; *Speaks v. U.S. Tobacco Coop., Inc.*, 5:12-CV-729-D, 2018 WL 988080, at *31 (E.D.N.C. Feb. 20, 2018).

The settlement meets all of these criteria, because it was reached at an advanced stage of litigation after completed discovery, summary judgment, pending appeal in the Fourth Circuit and was the product of arms-length, good-faith bargaining by experienced counsel, free from collusion. The Court agreed. *See Order* [DE 205 ¶ 2] (finding "the Action has been aggressively prosecuted and defended" and the agreement "reached through good-faith bargaining at arm's length").

**1. Advanced Posture and Discovery.** The "extent of discovery" factor ensures "all parties 'appreciate the full landscape of their case when agreeing to enter into the Settlement.'" *Brown v. Transurban USA, Inc*., 318 F.R.D. 560, 572 (E.D. Va. 2016) (citations omitted); *see also Flinn v. FMC Corp.*, *supra* ("fact that all discovery has been completed…is important, since it ordinarily assures sufficient development of the facts to permit a reasonable judgment on the possible merits of the case").

That summary judgment had been entered and the case was on appeal weighs heavily in favor of this fairness factor. This case was aggressively prosecuted and defended since its inception. *See Beaulieu*, 2009 WL 2208131, at *24; *see also* Dunn Decl. [DE 203-5 at ¶¶ 15-22]. "This certainly was not a 'file and settle'" case. *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, 6 (S.D. Fla. 2010). The parties reached settlement at an advanced stage of the Parties' dispute, while each was well aware of their respective positions, while the case was being actively litigated on appeal. *Id*.; Dunn Decl. [DE 203-5 at ¶¶ 15-22]. After the pleadings settled, the parties

issued discovery, including requests to produce, requests for admissions, interrogatories, and depositions of multiple witnesses in various states, including parties and non-parties. *See* Dunn Decl. [DE 203-5 at ¶ 12]. This discovery eventually generated motions to compel from each side. All of these motions were fully briefed, with responses and replies.

Armed with discovery, Plaintiffs moved for class certification, which Ascensus contested, and both Parties moved for summary judgment, entailing still further briefing and supporting materials. The Court heard the parties' arguments on class certification and summary judgment on September 2, 2016, afterwards entering an order confirmed by a judgment granting class certification and summary judgment on the merits for Plaintiffs and the Class. [DE 170-171]. Ascensus then appealed and both sides fully briefed and prepared for oral argument. *See* Dunn Decl. [DE 203-5 at ¶ 22].

**2. Arms-Length Settlement Negotiations.** That discovery was completed and that "there have been numerous filings on contested matters," visibly supports negotiations made in good-faith and at arms-length. *See In re Red Hat, Inc. Sec. Litig*., 2010 WL 2710517, *2. This contest set the stage for the parties' negotiations during appeal, which, while in good faith, were contentious. *See* Dunn Decl. [DE 203-5 at ¶¶ 16-22]. As stated previously, Ascensus appealed the judgment on October 11, 2016. It was not until after the appeal was fully briefed that the Parties reached agreement in principle, at approximately 6 PM, on September 12, 2017, on the eve of oral argument. *Id*. at ¶ 22. Those negotiations were intense, with each party adamantly advocating the party's respective position on the law and the merits, expressed in numerous written communications and telephone conversations. *Id.* at ¶ 20. This combined with the numerous contested matters reflected in the record demonstrates each side zealously pursued their respective

clients' interests and did not collude to reach a settlement. *See Beaulieu,* 2009 WL 2208131, at *25 (relying on counsel's description of negotiations); *Horton*, 855 F. Supp. 825, 830 (same).

That negotiations were at arms-length, free from collusion, is bolstered by the express terms of the Agreement. The terms of the Agreement indicate Class Counsel independently considered the amount, certainty, and immediate availability of benefits afforded Class Members under the terms of the Agreement versus the delay, risks, and expenses associated with continued and prolonged appellate proceedings. *See* Dunn Decl. [DE 203-5 at ¶19]. The terms, confirmed in the Court's Order ([DE 205 ¶22]), acknowledge that the Defendant continues to deny any and all liability to Plaintiffs and the Class. [DE 203-1 at p. 4].

The terms also show that the settlement relief to the Class was the primary concern in the settlement negotiations and resulting Agreement. The centerpiece of the proposed settlement is a Settlement Fund of $2,702,233.37. This relief and all other material terms of the proposed settlement benefitting the Class were negotiated separate from any negotiations on attorney's fees or service awards. [DE 203-1 at § 9.1]; see also Dunn Decl. [DE 203-5 at ¶ 21]; *see Berry v. Schulman,* 807 F.3d 600, 614 (4th Cir. 2015) (highlighting with approval that the awards to named plaintiff were not negotiated prior to agreement on substantive relief to the class). The parties also expressly acknowledge that the terms of the Agreement were not conditioned upon any minimum or maximum attorneys' fees award or service award. [DE 203-1 at § 9.1].

**2. Experience of Counsel.** Finally, Class Counsel and Defendant's counsel have extensive experience litigating and resolving class and ERISA actions, further supporting the fairness of the settlement. Class Counsel have previously documented their experience in class actions and ERISA. *See* DE 145-2 (declaration in support of class certification); *see also Brown,* 318 F.R.D. 560, 573 (evaluating experience for purpose of class settlement based on class counsel

12

declaration). This experience is likewise evident in the detail and substance of the Agreement's terms outlined above, which not only guarantee Defendant fund all costs of monetary relief, and notice, but also provide that Class Members be advised of tax consequences and other Plan-related matters by a court-appointed fiduciary approved by the Department of Labor. *See Beaulieu,* 2009 WL 2208131, at *25 (finding terms of settlement demonstrated experience).

In its order and judgment on class certification and summary judgment, the Court specifically found Class Counsel were adequate to represent the Class and found no evidence that Class Counsel were unqualified. [DE 170 at 15]; *see Beaulieu,* 2009 WL 2208131, at *25 (considering prior determinations court made about experience of class counsel). Also, defense counsel's firm, Greenberg Traurig, LLP, is a multinational firm founded in 1967, with locations throughout the US and other countries, handling multiple practice areas. Defense counsel Robert Bernstein is a shareholder, concentrating his practice in ERISA, employment, labor, and trade secret litigation.[5]

Based on the foregoing, the settlement is fair, was reached at an advanced stage of the case after completed discovery, dispositive motions, and was the product of arms-length, good-faith bargaining by experienced counsel, free from collusion.

**B. The Settlement is Adequate.**

Courts view "adequacy" of a proposed settlement as it relates to the consideration provided to the class members. Courts analyze settlement consideration, based on the record, settlement terms, and parties' representations, in light of certain factors, including, (1) the relative strength of the plaintiffs' case on the merits, (2) any difficulties of proof or strong defenses the plaintiffs would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated

---

[5] *See* https://www.gtlaw.com/en/professionals/b/bernstein-robert-h.

13

judgment, and (5) the degree of opposition to the proposed settlement. *Jiffy Lube*, 927 F.2d at 158; *Horton,* 855 F.Supp. at 829–30; *see also McLaurin v. Prestage Foods, Inc.*, 7:09-CV-100-BR, 2011 WL 13146422, at *4 (E.D.N.C. Nov. 9, 2011).

**1. Objections and Defendant's Wherewithal.** As of today's filing of this memorandum (May 7, 2018), with an objection deadline of even date, no class member has lodged protest to the settlement or any aspect of the relief and awards sought as a part of the settlement. The fact no one has filed objection to the settlement counsels in favor of approval. *See Flinn*, *supra*. ("The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration"); *Greenspun v. Bogan*, 492 F.2d 375, 380 (1st Cir. 1974) ("The absence of any detailed opposition is a relevant, if not always reliable, factor in assessing the fairness of such a proposal"); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, n. 15 (3d Cir. 1993) ("assuming silence constitutes tacit consent to the agreement…"). As to the fourth *Jiffy Lube* factor, solvency, Ascensus has about 30,000 employer/plan sponsor clients ([DE 147-2 ¶12]), billions in managed assets, notwithstanding agreement to pay the full amount of the Settlement Fund, $2,702,233.37, attorney's fee and costs. [DE 203-1 § 2.1].

**2. Strength, Difficulty, and Duration.** Regarding the first, second, and third *Jiffy Lube* factors, the Court delves into "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case. *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009). The record, party submissions, and terms of settlement, reflect Plaintiffs succeeded in the trial court, winning the full amount prayed for in the suit on summary judgment. But "compromise is the essence of a settlement and the trial court should not make a proponent of a proposed settlement justify each term of a settlement agreement against a hypothetical or speculative measure of what concessions might

14

have been gained since inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Lomascolo v. Parsons Brinckerhoff, Inc*., 1:08CV1310 (AJT/JFA), 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). While Plaintiffs won in the trial court, Defendant appealed. No counsel, "no matter how confident one may be of the outcome of litigation," can be absolutely sure about an outcome, on appeal or at trial. *See In re The Mills Corp. Sec. Litig*., *supra*.

### *a. Delay Versus Ninety Percent Recovery*

The Plan at issue in this case is on the eve of termination. *See* Dunn Decl. [DE 203-5 at ¶18]. Class Counsel were earnestly concerned about this and the delay, risks, and expenses associated with continued and prolonged appellate proceedings and the possibility of reversal. [DE 170]; Dunn Decl. [DE 203-5 at ¶19]; *see also McLaurin*, 2011 WL 13146422, at *4 (basing approval in part on concerns expressed by counsel); *Aramburu v. Healthcare Fin. Services, Inc.*, 02-CV-6535MDG, 2009 WL 1086938, at *5 (E.D.N.Y. Apr. 22, 2009) (noting settlement within range of reasonableness, "particularly in light of the value of obtaining certain compensation quickly"); *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 389 (1973) (reversing an approximately $140,000,000 judgment and directing dismissal of complaint after twelve years of litigation). These concerns were measured against the amount, certainty, and immediate availability of benefits afforded Class Members. Dunn Decl. [DE 203-5 at ¶19]; *see also In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006) (appropriate to weigh immediate recovery against protracted litigation); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) (finding "substantial and certain benefits" support approval of a settlement considering risk of recovering nothing at trial).

"In evaluating a settlement, the trial court should not…proceed from the assumption that victory is one hundred percent assured and that all claimed and that all claimed damages are

properly recoverable." *Muhammad v. Nat'l City Mortg., Inc.*, CIV.A. 2:07-0423, 2008 WL 5377783, at *5 (S.D.W. Va. Dec. 19, 2008). A proposed settlement may be approved even though it may "only amount to a fraction of the potential recovery." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 141 (S.D.N.Y. 2010); *see also S.C. Nat. Bank v. Stone*, 749 F. Supp. at 1427 (D.S.C. 1990). On balance, the Settlement Fund of $2,702,233.37, which is about 90.5% of the amount the Court awarded, provides a certain, immediate, and excellent settlement consideration for Class Members. Ninety cents on the dollar is an extraordinary result, affording the Class consideration in the higher range of class settlements.[6]

### b. Automatic Allocated Share

Moreover, "[c]ass settlements are rarely self-executing…[c]lass members must usually file claims forms providing details about their claims and other information needed to administer the settlement." Herr, David, *Manual Complex Lit.* § 21.66, p. 331 (4th Ed.). Here, though, the Agreement requires no claim forms and attendant "hoops" a class member must jump through to receive payment. Class Members do not have to do anything to be entitled to receive a payment from the Settlement Fund. If the Court finally approves the settlement after the Fairness Hearing, the Class member will be given payment or rollover options; in either case, the money will be automatically theirs. [DE 203-1 § 2.4]. Defendant will have paid all costs of providing notice to the Class and up to $40,000.00 of the costs of the Independent Fiduciary, whose job, among others,

---

[6] *See, e.g., Horton,* 855 F. Supp. at 833 (citing cases approving settlements providing only three and five percent of estimated losses); *see also Spann v. AOL Time Warner Inc.*, No. 02-CV-8238, 2005 WL 1330937, at *3 (S.D.N.Y. June 7, 2005) (ERISA settlement, approximately 18% of maximum possible recovery); *In re Worldcom, Inc. ERISA Litigation*, No. 02-CV-4816, 2004 WL 2338151, at *7 (S.D.N.Y. Oct. 18, 2004) (ERISA settlement, "at best about one-third or at worst less than 10% of the damages estimated by the plaintiffs"); *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.,* 15-CV-1113 (VAB), 2016 WL 6542707, at *10 (D. Conn. Nov. 3, 2016) (ERISA settlement at 76 % of potential recovery "extremely favorable" to the class); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 305 (S.D. Miss. 2014) (settlement fair and reasonable although it amounted to 46.5% of "most probable aggregate damages"); *DeWitt v. Darlington County, S.C.*, 4:11-CV-00740-RBH, 2013 WL 6408371, at *6 (D.S.C. Dec. 6, 2013) (settlement at 44% of "best-case scenario").

16

will be to field Class Member inquires, cut and mail checks to Class Members from the Settlement Fund after it has gathered sufficient records regarding the monies owed them but never deposited. *Id*. Also, when each class member suffered the same injury, a settlement plan of allocation based on the type and extent of injury is reasonable. *See Truesdale v. Nationwide Affinity Ins. Co. of Am.*, 1:11CV467, 2013 WL 12136588, at *5 (M.D.N.C. Apr. 4, 2013). Specifically, a plan of allocation in an ERISA settlement should be rationally based on the participants' proportionate losses in the 401(k) plan. *See In re Sprint Corp. ERISA* Litig., 443 F. Supp. 2d at 1262. The Parties settlement meets these standards: The Court found Class Members suffered a common injury. [DE 170 at 14-15]. After administrative costs, each Class Member's Allocated Share is at least 85% of the monies award by the Court, $2,985,914.27, [DE 203-1 §§ 2.1, 2.2] & Dunn Decl. [DE 203-5 at ¶ 24], which, consistent with the Court's findings [DE 170 at 18], represented monies deducted as Plan contributions from each Class Member's pay, but not deposited in the Plan on his/her behalf. Dunn Decl. [DE 203-5 at ¶24].

### *c. Other Provisions Demonstrating Adequacy*

The settlement provides a couple other benefits for Class Members in support of adequacy. It incorporates a host of protections to ensure the settlement is administered objectively and independently through an Independent Fiduciary, with ample opportunity for Class Members to ask questions and seek guidance on the settlement proceeds. [DE 203-1 at §§ 2.4, 2.8]. Also, the notice administration charges, attorney's fees and costs, and part of the Independent Fiduciary's costs provided for in the Agreement benefit the Class because Defendant pays them separately from the Settlement.[7]

---

[7] *Cf. Berry v. Schulman*, 807 F.3d 600, 618 (4th Cir. 2015) (noting scrutiny of fees requests diminished when fees paid by defendant); *Local 56, United Food and Commercial Workers Union v. Campbell Soup Co.,* 954 F. Supp. 1000, 1005 (D.N.J. 1997) (granting class counsel the maximum amount of fees agreed to by defendant under the settlement agreement, where "class members . . . retain all that the settlement provides [and] do not lose any of the negotiated

## V. CONCLUSION

All the *Jiffy Lube* factors are well satisfied, as such the settlement is fair, reasonable and adequate and the Joint Motion for Final Approval of Class Settlement should be granted.

Dated: May 7, 2018

Respectfully submitted,

/s/ Stephen A. Dunn
Stephen A. Dunn
N. C. State Bar No. 12389
sdunn@emanuelanddunn.com

/s/ S. Michael Dunn
S. Michael Dunn
N. C. State Bar No. 47713
mdunn@emanuelanddunn.com
EMANUEL & DUNN
Post Office Box 426
Raleigh, North Carolina 27602
Telephone (919) 832-0329
Facsimile (919) 832-6731

/s/ Steven R. Jaffe
Steven R. Jaffe, Esq.
110 North Federal Hwy, Suite 501
Fort Lauderdale, Florida 33301
Telephone: (954) 647-8158
E-mail: steve@pathtojustice.com

---

benefits on account of an attorneys' fee and costs award that equals the 'cap' on such an award set forth in the settlement"); *In re Vitamins Antitrust Litig.,* MDL 1285, 2001 WL 34312839, at *9 (D.D.C. July 16, 2001) (holding attorneys' fees that are borne by defendants and not plaintiffs are a valuable part of the settlement and fairly characterized as part of the common fund.").

**CERTIFICATE OF SERVICE**

I, S. Michael Dunn, hereby certify that the foregoing MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT was filed electronically through the Court's CM/ECF system and will be sent to the following counsel of record:

> Robert H. Bernstein, Esq.
> Greenberg Traurig, LLP
> 500 Campus Drive
> Florham Park, New Jersey 07932
>
> L. Phillip Hornthal, III &
> L.P. Hornthal, Jr.
> Hornthal, Riley, Ellis & Maland, LLP
> 301 E. Main Street
> Elizabeth City, NC 27909

This 7th day of May, 2018.

> /s/ S. Michael Dunn
> S. Michael Dunn
> N. C. State Bar No. 47713
> EMANUEL & DUNN
> Post Office Box 426
> Raleigh, North Carolina 27602
> Telephone (919) 832-0329
> Facsimile (919) 832-6731
> mdunn@emanuelanddunn.com